**In re Joseph F. BURKHARDT, Debtor.**

**Bankruptcy No. 97–40459.**

United States Bankruptcy Court,
D. New Jersey.

May 13, 1998.

Mark Goldman, East Orange, NJ, for Debtor.

Marc Alan Krefetz, Deputy Attorney General, Trenton, NJ.

John Scura, Scura & Scura, Fairfield, NJ, Standing Chapter 13 Trustee.

### OPINION

WILLIAM F. TUOHEY, Bankruptcy Judge.

### INTRODUCTION

The present matters come before the Court upon the Motion filed by the debtor,

Joseph Burkhardt on November 26, 1997 seeking an Order of this Court compelling the New Jersey Division Of Motor Vehicles ("DMV") or "any other appropriate entity" to restore the debtor's driving privileges ("Motion to Compel Restoration") and upon the proposed confirmation of debtor's Chapter 13 Plan.

By its submission filed December 4, 1997, and without filing a general notice of appearance, The Attorney General of the State of New Jersey objected to the jurisdiction of this Court to order the restoration of the debtor's driving privileges relying on the Eleventh Amendment and principles of sovereign immunity, citing *inter alia* the recent landmark Supreme Court decision in *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).[1]

On January 28, 1998, in addition to entertaining a brief oral argument concerning the debtor's Motion to Compel Restoration, the Court conducted a hearing concerning confirmation of the debtor's Chapter 13 Plan. No one appeared in opposition and/or submitted an objection to the Plan.[2] Finding that the matters were inter-related however, the Court then took both the Motion to Compel Restoration as well as the confirmation of the Chapter 13 Plan under advisement to examine the jurisdictional issues involved. The Court notes from the Certification of Service filed by debtor's counsel in this matter on November 26, 1997, both the State of New Jersey, Automobile Insurance Surcharge & Collections Department and the Department

of Law and Public Safety as well as the Municipal Courts concerned, were notified of the debtor's Motion, yet were not represented at the January 28, 1998 hearing. In addition, no proof of claim has been filed by either the State of New Jersey nor any of the municipalities in this case.

Issues concerning the confirmation of a Chapter 13 Plan are core proceedings as defined by the United States Congress in 28 U.S.C. section 157. In addition, with respect to the Motion to Compel Restoration, the Court has the "power to interpret the language of the jurisdictional instrument and its application to an issue before the court." *In re Morrell*, 218 B.R. 87 (Bankr.C.D.Cal.) (citing *Stoll v. Gottlieb*, 305 U.S. 165, 171, 59 S.Ct. 134, 137, 83 L.Ed. 104 (1938)). Thus, "as the Eleventh Amendment is a limitation on federal subject matter jurisdiction," id., this Court can properly consider whether there is subject matter jurisdiction over the Motion before it. The within Opinion constitutes this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052.

## FINDINGS OF FACT

The facts of this matter are not in dispute, and may be summarized as follows.

The debtor, Joseph Burkhardt, filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 8, 1997. The debtor's petition indicates that he is a resident of Kearny, New Jersey. His Summary of Schedules indicates that Mr. Burkhardt

---

1. As discussed by the Third Circuit in *Sacred Heart*, 133 F.3d at 241. In *Seminole Tribe*, the Supreme Court held that "The Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." (Citing 517 U.S. at 70–74, 116 S.Ct. at 1131–32). "Thus, since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment." 133 F.3d at 237 (citing *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*, 131 F.3d 353, 358 (3d Cir.1997)).

The Due Process Clause of the Fourteenth Amendment provides: "no state shall deprive any person of life, liberty, or property without due process of law." U.S. Const.Amend. XIV, section 1. Section Five of the Fourteenth Amendment gives Congress the power to "en-

force, by appropriate legislation, the provisions of this article." U.S. Const.Amend. XIV, section 5.

As was recognized in footnote 7 in *Sacred Heart*, the Fourteenth Amendment, adopted well after the adoption of the Eleventh Amendment, "expanded federal power at the expense of state autonomy and thereby fundamentally altered the pre-existing balance between state and federal power achieved by Article III and the Eleventh Amendment." 133 F.3d at 241, fn. 7.

2. The Objection filed by the State of New Jersey in this matter goes to the issue of jurisdiction of this Court over the restoration of driving privileges and does not deal with the issue of confirmation of the debtor's plan. (State's Objection, filed December 4, 1997).

has total assets of $780.00 and total liabilities of $25,170.00, consisting solely of creditors holding unsecured nonpriority claims. At the time of the filing of the petition, Mr. Burkhardt was unemployed due to a permanent disability.[3] It was argued by his counsel, that Mr. Burkhardt "needs his driver's license to actually obtain employment." (Transcript of the January 28, 1998 hearing, P.4). The Court notes from a further review of Schedules I and J respectively, that the debtor's total monthly income, which is comprised of worker's compensation, is $1,416.00 and that the debtor's total monthly expenses are listed as $1,305.00.[4]

As to the debtor's liabilities, Schedule F of the petition lists, a $2,800.00 unsecured debt for a student loan, a $12,000 unsecured debt to "CRW Financial", a $6,000 debt to the Department of Banking and Insurance, Unsatisfied Claim Fund, and approximately, a total of $4,370 representing debts owed for insurance surcharges, as well as various motor vehicle violations, including two speeding tickets. For purposes of clarity, with respect to the $4,370 in surcharges and municipal fines referenced above, the Court notes that the following specific pre petition debts are listed as owed:

| | | |
|---|---|---|
| AISC, Trenton, New Jersey | (surcharge) | - $(unknown) |
| Hudson County District Court, | (speeding ticket) | - $ 85.00 |
| Mobile, Alabama | (insurance surcharge) | - $2,000.00 |
| Jersey City Municipal Court | (speeding ticket) | - $ 85.00 |
| Hackensack Municipal Court | (claim listed as "other") | - $ 800.00 |
| North Bergen Municipal Court | (claim listed as "other") | - $ 700.00 |
| Municipal Court of Oradell | (claim listed as "other") | - $ 700.00 |

As referenced in counsel for the debtor's supporting Certification, filed November 26, 1997, the debtor's driver's license was suspended by the New Jersey DMV pre-petition, "because of unpaid judgments, surcharges and/or fines/penalties owed to a particular municipality." The Certification further states that the debtor's schedules filed in this matter list all of the debts which are the basis for the license suspension. (Certification of Mark Goldman, filed

November 26, 1997, paras. 3–5). Moreover, stating that "all of the obligations noted in the petition are dischargeable debts according to section 1328 of the Bankruptcy Code", debtor's counsel indicates that his firm has written numerous letters to the listed creditors requesting reinstatement of the debtor's driver's license and that the various creditors have taken no action to restore the license. Debtor's Brief filed in this matter on November 26, 1997 further indicates that the applicable periods of suspension have been served. By the within Motion, the debtor therefore requests that this Court order the New Jersey DMV "or any other appropriate entity" to restore the debtor's driver's license immediately. In addition, debtor requests that the Court confirm the Chapter 13 Plan which contemplates a payment of $75 for sixty months, representing a 5% payment to unsecured creditors in this case.

## DISCUSSION

The specific issues presented by this matter are as follows: First, does this Court have subject matter jurisdiction to compel the restoration of driving privileges which have been suspended by municipal courts for pre-petition motor vehicle offenses, in accord with confirmation and repayment of a percentage of the fines under the debtor's Chapter 13 Plan. Second, in light of the District Court of New Jersey's recent opinion in *In re Kish*, 212 B.R. 808 (D.N.J.1997), which will be discussed at length herein, in which case the District Court found that the bankruptcy court had no jurisdictional authority to determine dischargeability wherein motor vehicle surcharges, the New Jersey Division of Motor Vehicles ("DMV") and the Eleventh Amendment immunity of the State is concerned, this Court considers *sua sponte*, whether the Eleventh Amendment operates as a jurisdictional bar to the ability of this

---

3. At the hearing on this matter it became clear that the debtor is 39 years old and had severed a hand which has been reattached. (T. 4).

4. Schedule J more particularly breaks down the $1,305.00 in total monthly expenses as follows:

$600 - rent
$ 95 - utilities
$ 50 - home maintenance
$350 - food
$ 50 - clothing
$ 60 - laundry and dry cleaning
$ 50 - transportation
$ 50 - recreation

Court to discharge motor vehicle surcharges and fines in the context of a Chapter 13 Plan.

In analyzing the Motion to Compel Restoration, this Court has previously, in its published Opinion *In re Perez,* 220 B.R. 216 (Bankr.D.N.J.1998), carefully examined the case law in this area, including the 1996 United States Supreme Court decision in *Seminole,* 517 U.S. 44, 116 S.Ct. 1114, and the Third Circuit Court of Appeals and New Jersey District Court decisions in *In re Sacred Heart Hospital of Norristown, v. Commonwealth of Pennsylvania, Dept. of Public Welfare,* 133 F.3d 237 (3rd Cir.1998); and *In re Kish,* 212 B.R. 808 respectively, as well as the pertinent New Jersey statutes dealing with the suspension and restoration of New Jersey drivers' licenses upon the failure to pay fines and surcharges associated with motor vehicle violations.

In *Perez,* this Court found that it lacked subject matter jurisdiction to compel restoration of a debtor's driving privileges, which had been suspended pre petition for municipal traffic offenses. 220 U.S. 216. The debtor therein sought to have his driver's license restored in accordance with confirmation and a repayment of a percentage of the fines under his Chapter 13 Plan. In that case, this Court found that to issue such a ruling concerning restoration of a Chapter 13 debtor's driving privileges, *either through the issuance of an order to the municipal courts concerned or directly to the New Jersey Division of Motor Vehicles ("DMV"),* would, of necessity, impact the Eleventh Amendment immunity of the State of New Jersey, by compelling the DMV, as a "real party in interest" and arm of the State, to either act or to refrain from acting under the pertinent provisions of the New Jersey "Parking Offenses Adjudication Act", N.J.S.A. 39:4–139.2, et seq.

The ruling herein follows the *Perez* decision to find a lack of subject matter jurisdiction concerning the restoration of driving privileges for suspension resulting from a failure to pay fines and automobile insurance surcharges concerning the particular motor vehicle offenses involved herein. More importantly, however, for the purposes of the current analysis, this Court now examines the ability of a Chapter 13 debtor to confirm a Chapter 13 plan which contemplates a payment of a percentage of the pre petition fines and surcharges and the discharge of such debts pursuant to Bankruptcy Code section 1328 upon completion of all payments under the Plan. Both the former opinion in *Perez* as well as the present matter raise jurisdictional issues of first impression for the Bankruptcy Court, subsequent to the Third Circuit's most recent holding in *In re Sacred Heart Hospital of Norristown,* 133 F.3d 237 (3rd Cir.1998), which found section 106 of the Bankruptcy Code unconstitutional to the extent it purports to abrogate the States' Eleventh Amendment immunity.

Finding this case indistinguishable from *Perez* insofar as both debtor's seek an order of *this Court* compelling the restoration of state driving privileges upon confirmation of a Chapter 13 Plan, this Court denies, for lack of subject matter jurisdiction, the debtor's Motion to Compel Restoration. The Court will further enter an Order however, in conjunction with the within Opinion, which confirms the debtor's unopposed Chapter 13 Plan, which Plan contemplates a discharge of the listed fines and surcharges upon debtor's completion of all payments under the Plan. That is, upon careful examination of the record before it, as well as the history of case law concerning the proper application and scope of the Eleventh Amendment, as will be discussed herein, this Court finds that the State of New Jersey is *not* immunized by the Eleventh Amendment from having its debts discharged through confirmation and payment under a Chapter 13 Plan, since such confirmation and resulting discharge of debt pursuant to Bankruptcy Code section 1325 and 1328 respectively, does not involve a 'suit in law or equity' against the State.

Moreover, in so finding, this Court emphasizes the fundamental jurisdiction of this Court over matters concerning the restructuring of a debtor's obligations through confirmation of a Chapter 13 Plan and the discharge of said obligations upon completion of all payments under a Plan. Finally, the Court limits the scope of its holding herein to matters concerning dischargeability in the context of confirmation of a Chapter 13 Plan,

and makes no finding herein regarding the jurisdiction of this Court over matters raising a sovereign immunity defense to dischargeability actions brought by a debtor or to actions to enforce the bankruptcy discharge.

## ANALYSIS

### Eleventh Amendment Immunity

The Eleventh Amendment provides:

The Judicial power of the United States shall not be construed to extend to *any suit in law or equity*, commenced or prosecuted against one of the United States by citizens of another State, or by citizens or subjects of any Foreign State. U.S. Const. Amend. XI.

(emphasis added).

That the Eleventh Amendment also bars suit against the State by its own citizens has been recognized by the Supreme Court in *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974).

■ The Third Circuit in its recent decision in *In re Sacred Heart Hospital of Norristown* reasoned:

This immunity is based on a two-part presupposition: (1) each state is a sovereign entity in our federal system (citation omitted); and (2) It is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent. (citation omitted). 133 F.3d at 241.

It further cautioned that Eleventh Amendment immunity is not absolute in that there are two ways to divest a state of its Eleventh Amendment immunity and hale the state into federal court:

First, a state may *waive* its Eleventh amendment sovereign immunity and consent to suit in federal court. (citation omitted). Second, *Congress can abrogate* a state's Eleventh Amendment immunity, but only if two requirements are met: Congress must unequivocally express an

intent to abrogate state immunity, and the legislative action must be "pursuant to a valid exercise of power...." (citation omitted). *Id.* (emphasis added)

Once an express intent by Congress to abrogate is found, the federal court must then determine whether Congress, in enacting the legislation, was acting pursuant to a valid exercise of power. *Id.*

In *Sacred Heart*, the Third Circuit further instructed that prior to the Supreme Court's holding in *Seminole*, two sources of authority had been recognized by the Supreme Court as being vehicles through which Congress could validly abrogate state sovereign immunity: Section 5 of the Fourteenth Amendment [5] and the Interstate Commerce Clause. *Id.* In *Seminole* however, the Supreme Court ruled that "the Eleventh Amendment restricts the judicial power under Article III, and Article I cannot be used to circumvent the constitutional limitations placed upon federal jurisdiction." 133 F.3d at 237. And as was further recognized by the Third Circuit in its ruling in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 131 F.3d at 358 "....since *Seminole Tribe* section five of the Fourteenth Amendment has been the sole basis for Congress to abrogate the states' immunity under the Eleventh Amendment."

Significantly for purposes of the current analysis, in *Sacred Heart*, the Third Circuit addressed the issue of whether Congress expressly abrogated the state's Eleventh Amendment immunity when enacting the current version of § 106 of the Bankruptcy Code and, whether § 106 was passed pursuant to a constitutional provision granting Congress the power to abrogate

Section 106 provides in relevant part:

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section...

---

5. Section 5 of the Fourteenth Amendment provides that "Congress shall have the power to enforce, by appropriate legislation, the provisions of this article." U.S. Const.Amend. XIV, section 5.

In *Katzenbach v. Morgan*, the Supreme Court stated:

Correctly viewed, section 5 is a positive grant of legislative power authorizing Congress to exercise its discretion in determining whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment. 133 F.3d at 243 (citing 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966)).

The *Sacred Heart* Court then held that while Congress undoubtedly expressed its *intent* to abrogate the State's Eleventh Amendment immunity under the Bankruptcy Code by enacting § 106(a), there is no evidence that Congress did so pursuant to § 5 of the Fourteenth Amendment and therefore, § 106(a) is *unconstitutional* to the extent it purports to abrogate state sovereign immunity in federal court. 133 F.3d at 244.

The Court notes that the broad holding of the majority in *Sacred Heart* rejected *all* sources of abrogation power in Article I, including both the Indian Commerce Clause and the Bankruptcy Clause. The concurring Opinion by Circuit Judge Roth, on the other hand, would deal with potential sources of abrogation power in Article I as they arise on a "case by case" basis and would limit the majority's holding therein to rejecting the Bankruptcy Clause as a source of abrogation power post-*Seminole*. 133 F.3d at 244. This Court notes that as set forth in footnote 8 of the majority opinion in *Sacred Heart*, the Court's holding in striking down § 106 as a valid abrogation of sovereign immunity is in line with at least two pre-*Seminole*, Supreme Court cases, *Hoffman v. Connecticut Department of Income Maintenance*, 492 U.S. 96, 109 S.Ct. 2818, 106 L.Ed.2d 76 (1989) and *U.S. v. Nordic Village, Inc.*, 503 U.S. 30, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) which held that the states and federal government are not deemed to have waived their sovereign immunity by virtue of enacting former § 106(c) of the Bankruptcy Code which was later amended and re-codified as current § 106(a). 133 F.3d at 242, fn. 8.

### Debtor's Motion to Compel Restoration

As in the case *sub judice*, the issuance of the Third Circuit's decision in *Sacred Heart* on January 8, 1998 caused this Court in *Perez* to examine the subject matter jurisdiction of the Bankruptcy Court to issue an order to the municipal courts concerned reinstating the Chapter 13 debtor's driver's license in accordance with confirmation of his Chapter 13 Plan. In *Perez*, as an issue of

first impression, subsequent to the Third Circuit's holding in *Sacred Heart*, 133 F.3d 237, which found section 106 of the Bankruptcy Code [6] unconstitutional to the extent it purports to abrogate the state's Eleventh Amendment immunity, this Court found that it lacks subject matter jurisdiction to order the restoration of a debtor's driving privileges in accordance with confirmation of a debtor's Chapter 13 Plan, *either through the issuance of an order to the municipal courts concerned or directly to the DMV* since to do so would necessarily impact the State and its Eleventh Amendment immunity, by requiring the DMV to either act or to refrain from acting under the pertinent New Jersey statutes involved concerning motor vehicle parking violations. *Perez*, 220 B.R. 216.

In large part, this Court premised its holding in *Perez*, on the District Court of New Jersey's holding in *In re Kish*, 212 B.R. 808, which involved a discharged Chapter 7 debtor's adversary proceeding against the DMV, seeking a determination that she had discharged surcharges for motor vehicle offenses. In *Kish*, the District Court held that the New Jersey DMV was unquestionably a state agency entitled to Eleventh Amendment immunity and a "real party in interest," in that matter, since a ruling concerning the discharge of surcharges, "would seriously interfere with the public administration of the surcharge program and the ability of high risk drivers to obtain and maintain insurance coverage." 212 B.R. at 813. Thus, Judge Brown of the District Court held in *Kish* that to the extent that the Bankruptcy Court's finding of nondischargeability implicated the DMV's legal rights, the Bankruptcy Court would be reversed for lack of subject matter jurisdiction. 212 B.R. at 817.

In addition, in *Perez*, this Court specifically relied on the "identity of interest" provided for under state law, specifically, N.J.S.A. 39:5–2, under which the Director of the DMV is conferred the same powers as a magistrate under Title 39, Subtitle 1, concerning motor vehicle and traffic laws in this State. As

---

**6.** Section 106 of the Bankruptcy Code provides in relevant part:

Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to

a governmental unit to the extent set forth in this section...

applied to the case herein, it is unclear from the record, which municipal court(s) and/or for which of the listed violation(s) (i.e. failure to pay speeding tickets or otherwise), the debtor's driver's license has been suspended.[7] The Court is only apprised by debtor's counsel that the suspension occurred as a result of one or more of the listed violations. Moreover, the Court notes, that it is further unclear from the record whether or not a separate suspension may have been issued by the State.

In this regard, the Court is in receipt of a letter from debtor's counsel dated February 24, 1998, which indicates the debtor's position, in that it concedes that in light of the Third Circuit's holding in *Sacred Heart,* the State cannot be compelled, in the Bankruptcy Court to restore the driving privileges of the debtor. The letter further states however, that it is the debtor's position that this Court may nevertheless rule on the issue of the *municipal* court matters which would essentially require the *municipal* court to issue rescission orders to the DMV lifting the pre petition orders of suspension. Any separate suspension issued by the State, to the extent that any exist, would not be affected unless counsel for the debtor addressed the matter in a separate state court action. (Letter of debtor's counsel, dated February 24, 1998).

In so arguing, and without specifically citing same, debtor's counsel relies on a line of decisions cited by this Court in *Perez,* which held that Eleventh Amendment immunity extends only to states, arms of the state or state officials or agents and does not extend to counties and similar municipal corporations. See *In re Christie,* 218 B.R. 27

(Bankr.D.N.J.1998); *Mt. Healthy City School District Board of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d.471 (1977) and *In re Decalcomania Mfg. Corp.,* 142 B.R. 670 (Bankr.D.N.J.1990). In addition, counsel for the debtor contends that the "super discharge" of Bankruptcy Code section 1328 applies to the listed motor vehicle violations and that since the debts are dischargeable in the context of this Chapter 13 proceeding, the automatic stay provision of section 362 and the anti discrimination provision of section 525 of the Code require the immediate reimposition of the debtor's driving privileges in this State.

■ Under the rationale employed by this Court in *Perez,* debtor's arguments must fail. This Court has found and holds again in the case *sub judice,* that to the extent that the debtor seeks an Order of *this Court* compelling restoration of driving privileges in accord with confirmation and payment under a Chapter 13 Plan, *whether through issuance of an order to the municipal court involved or directly to the DMV,* this Court is without jurisdiction to issue such an order insofar as such a ruling would, of necessity, impact the Eleventh Amendment immunity of the State of New Jersey concerning its motor vehicle licensing practices and procedures. The Court has found such a ruling, as suggested by debtor's counsel, violative of the Third Circuit's pronouncement in *Sacred Heart,* that Bankruptcy Code section 106 is unconstitutional to the extent that it purports to abrogate state sovereign immunity.

In *Perez,* the Court further *sua sponte* treated and rejected the section 525[8] "anti-

---

**7.** In response to a letter dated April 15, 1998 to debtor's counsel from the Court, on notice to all parties involved, inquiring as to the nature of the offenses for which the suspensions were issued as well as the particular surcharges and fines involved, debtor's counsel then advised the court by letter dated May 4, 1998 of the following:

— CRW Financial is a $12,000 debt of which a certain portion of this amount, approximately $7,000, represents property damage and the balance is a surcharge;

— Department of Banking and Insurance is a $6,000 debt incurred as a result of an automobile accident where there was no insurance and this debt would be owed to the Unsatisfied Claim and Judgment Fund Board;

— the debts owed to the Municipal Courts of Hackensack, North Bergen and Oradell represent fines imposed against the debtor for having no insurance and no registration for incidents that occurred approximately eight to nine years ago;

— the last debt is for an insurance surcharge in the amount of $2,000 from a billing agency in Mobile, Alabama.

**8.** Section 525 of the Code provides in pertinent part:

*Protection against discriminatory treatment* ... a governmental unit may not deny, revoke, suspend, or refuse to renew a license, [of] a person that is or has been a debtor under this title.....

discrimination provision" argument as raised by debtor's counsel herein as no longer applicable in this Court's view. That is, with the Third Circuit's holding in *Sacred Heart*, that Bankruptcy Code section 106 is unconstitutional to the extent that it purports to abrogate states' sovereign immunity, any decision by this Court to restore driving privileges to a debtor, pursuant to Bankruptcy Code section 362, 525 or otherwise, would be violative of the State of New Jersey's Eleventh Amendment immunity from federal suit.

Moreover, to the extent that the case *sub judice* is distinguishable from *Perez* in that it involves violations of different motor vehicle statutes, other than municipal parking ordinances, the Court finds such a distinction irrelevant insofar as the *result sought is the same;* rescission of municipal court orders of suspension and restoration of a debtor's state issued driver's license. Finally, as in *Perez,* it is important to emphasize the limitation of the *scope* of the Court's ruling herein to matters concerning the applicability of Eleventh Amendment immunity where municipalities, state licensing and the DMV are concerned. That is, the Court makes no finding herein, regarding the jurisdiction of this Court to issue orders to a municipality in the context of a bankruptcy filing, which does not impact the State.

### Proposed Confirmation of the Debtor's Chapter 13 Plan

Having found that the Bankruptcy Court lacks subject matter jurisdiction to impact a state issued and regulated driver's license, the Court will now turn its attention to the ability of a Chapter 13 debtor to confirm a plan which contemplates a discharge of fines and surcharges imposed by municipal courts and/or the State of New Jersey for motor vehicle violations, which in part run to the State, upon completion of payments under the Chapter 13 Plan.[9] As indicated earlier

---

**9.** The Court finds as a result of its independent research into the statutory law in this area, particularly, N.J.S.A. 39:5–40; N.J.S.A. 39:5–41; N.J.S.A. 39:4–197; N.J.S.A. 22A:3–4; and N.J.S.A. 2B:12–30, that *all title 39 violations* whether written by a state or municipal officer as well as *violations of municipal traffic ordinances,* run to the State to the extent that a portion of all

herein, the debtor proposes a 5% payment to unsecured creditors in this case.

■ In this regard, Bankruptcy Code section 1328 provides for a broad discharge to a Chapter 13 debtor who successfully completes payment under a Chapter 13 Plan. That section provides:

1328 Discharge

(A) As soon as practicable after completion by the debtor of all payments under the plan, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter, the court shall grant the debtor a discharge of all debts provided for by the plan or disallowed under section 502 of this title, except any debt—

(1) provided for under section 1322(b)(5) of this title;

(2) of the kind specified in paragraph (5), (8), or (9) of section 523(a) of this title; or

(3) for restitution, or a criminal fine, included in a sentence on the debtor's conviction of a crime.

11 U.S.C. section 1328(A).

In determining whether or not this Court has jurisdiction over the particular debts ultimately sought to be discharged by the debtor pursuant to Bankruptcy Code section 1328 upon completion of all payments under his Chapter 13 Plan, the Court has reviewed the history of New Jersey Bankruptcy Court decisions involving fines imposed for motor vehicle infractions and automobile insurance surcharges in the context of both Chapter 7 and Chapter 13 cases, prior to the District Court of New Jersey and Third Circuit Court of Appeals decisions in *Kish,* and *Sacred Heart* respectively.

At the outset, the Court recognizes that in dealing with fines and surcharges assessed

---

of the above referenced violations contain mandatory court cost assessments of *inter alia* $2.00 per violation which goes to the "Automated Traffic System Fund", a dedicated fund within the General fund of the State of New Jersey and is administered by the Administrative Office of the Courts.

pursuant to N.J.S.A. 17:29A–35[10] for motor vehicle infractions within New Jersey, the Court's research has disclosed three distinct lines of cases. The first line of cases deals with fines and insurance surcharges involving offenses for driving while intoxicated (DWI) in the context of dischargeability litigation, prior to enactment of the Criminal Victims Protection Act of 1990, Pub.L. 101–581 and the amendment to section 523(a)(9) of the Bankruptcy Code which excepts from discharge, any debt for death or personal injury caused by the debtor's operation of a motor vehicle while intoxicated. 11 U.S.C. section 523(a)(9).[11] *See Lugo v. Paulsen*, 886. F.2d 602 (3rd Cir.1989) (Third Circuit upholding District Court finding, prior to the 1990 amendment of section 523(a)(9), that motor vehicle surcharges relating to DWI infraction were nondischargeable in Chapter 7); *In re Adams*, 106 B.R. 811 (Bankr.D.N.J.1989) (Pre 1990 amendment holding by Judge Gambardella that debtor's obligation to state for surcharges associated with prior DWI conviction qualified as prepetition "debt" dischargeable in Chapter 13 proceeding, notwithstanding state's right to payment was enforceable by suspension of driver's license rather than money judgment); and *In re Graham*, 85 B.R. 713 (Bankr.D.N.J.1988) (Judge Gindin holding in early case that insurance surcharge levied under New Jersey law as a result of conviction for DWI was not a "debt" that could be discharged in a Chapter 7 case, as there was no prepetition right to payment).

The second area of cases involve non DWI related infractions concerning fines and or insurance surcharges for operation of a motor vehicle without insurance or driving while on the revoked list or other similar motor vehicle violations. *See In re Cuevas*, 205 B.R. 457 (Bankr.D.N.J.1997) (debtor convicted prepetition of driving without insurance,

for improper tag display, and for two offenses of driving on the revoked list, Judge Wizmur held incarceration of debtor upon his nonpayment of fines imposed for pre petition offenses was not attempt to collect prepetition debt, but was rather a mere continuation of criminal proceedings previously commenced against the debtor, to which automatic stay did not apply); *In re Bill*, 90 B.R. 651 (Bankr.D.N.J.1988) (Judge Stripp holding in early and often cited case that surcharges imposed for pre petition convictions for refusal to submit to breathalyzer and reckless driving were "debts", the collection of which was stayed and suspension of Chapter 13 debtor's driver's license solely because of his failure to pay traffic violation surcharges which were dischargeable, violated the Bankruptcy Code); *In re Christensen*, 95 B.R. 886 (Bankr.D.N.J.1988) (Judge Gambardella holding that surcharge stemming from refusal to submit to breathalyzer was prepetition debt dischargeable in Chapter 13); *In re De Baecke*, 91 B.R. 3 (Bankr.D.N.J.1988) (Judge Stripp finding surcharges imposed by DMV for traffic violation convictions are "debts" dischargeable in Chapter 13 if offense occurred before petition is filed); *In re Kent*, 190 B.R 196 (Bankr.D.N.J.1995) (Judge Wizmur holding, in context of Chapter 7 case, that motor vehicle surcharge is an assessment which must be paid as a consequence of violations of certain motor vehicle laws and that same fall under the discharge exception for debts that are fines or penalties payable to and for benefit of governmental unit, pursuant to 11 U.S.C. section 523(a)(7)); and *In re Curtin*, 206 B.R. 694 (Bankr.D.N.J. 1996) (decision by this Court adopting Judge Wizmur's decision in *Kent* that New Jersey motor vehicle surcharge constitutes a "penalty" within the meaning of section 523(a)(7), and as such is nondischargeable in Chapter 7 proceeding).

---

**10.** The courts reference to "surcharges" herein concerns all monies levied on automobile drivers pursuant to N.J.S.A. 17:29A–35 for violation of that statute.

**11.** As was recognized by Judge Wizmur in *Matter of Kent*, 190 B.R. 196, 198 (Bankr.D.N.J.1995), the Criminal Victims Protection Act of 1990 Pub. L.101–581 substituted "for death or personal injury caused by the debtor's operation of a motor

vehicle if such operation was unlawful because the debtor was intoxicated from using alcohol, a drug, or another substance" for the language in the prior section 523(a)(9). The amendment effectively limited non-dischargeable debts under subsection 523(a)(9) to debts premised on death or personal injury caused by an intoxicated driver. The section no longer has applicability to motor vehicle surcharges.

The third and final line of cases, including the recent *Perez* decision cited earlier herein, is distinguishable from the above referenced lines of cases in that the infractions involve fines assessed for violations of municipal ordinances, such as overtime meter parking. *In re Alicea,* 199 B.R. 862 (Bankr.D.N.J. 1996) (Judge Stripp denying confirmation of a Chapter 13 Plan finding that debtors did not meet burden of proving sufficient reason for paying parking ticket in full through proposed plan while paying nothing to other non priority unsecured creditors, though none of non priority unsecured creditors would receive any payment in Chapter 7).

Upon careful review of the above referenced decisions of Bankruptcy and District Courts throughout the State of New Jersey, several trends become clear. First, as to the issue of automobile insurance surcharges in the context of *Chapter 7* proceedings, the New Jersey Bankruptcy Courts have consistently held that the surcharge is a "penalty payable to a governmental unit" within the meaning of Bankruptcy Code section 523(a)(7) and that therefore such surcharges are nondischargeable. *In re Kent,* 190 B.R. 196; *In re Graham,* 85 B.R. 713. Conversely, in the *Chapter 13* context, New Jersey Bankruptcy Courts have uniformly considered the surcharge to be a "debt" payable through a Chapter 13 Plan. That is, courts have held that the surcharges are within the broad ambit of a section 1328 discharge which occurs upon completion of payments under the debtor's Chapter 13 Plan. *In re Bill,* 90 B.R. 651; *In re Adams,* 106 B.R. 811; *In re Christensen,* 95 B.R. 886; *In re De-Baecke,* 91 B.R. 3.

Although the case law is more scant on the issue of dischargeability of municipal traffic ordinance violations alone, through either a Chapter 7 or Chapter 13 Plan, the Court finds the analysis and result in such cases basically mirrors that of the treatment of surcharges. That is, in a Chapter 7 case, the fines are generally excepted from discharge pursuant to section 523, while in the Chapter 13 arena, such fines are generally payable through a Chapter 13 Plan. See *In re Alicea,* 199 B.R. 862 (recognizing that a parking ticket could be paid through a Chapter 13

Plan but denying the debtor confirmation where Plan proposed to pay parking ticket in full and pay nothing to other unsecured creditors; Court found that Congress chose to grant a broader discharge under Code section 1328(a)(2) than under section 727(b)).

Most recently in *In re Kish,* 212 B.R. 808, Judge Stripp of the Bankruptcy Court agreed with the prior holdings in *Kent* and *Curtin* cited above, insofar as he found that, in a case involving an adversary proceeding against the DMV and state created insurance funds, seeking declaratory and injunctive relief, the surcharges imposed against the debtor as a consequence of the debtor's violations of motor vehicle laws, were "penalties" within the meaning of Bankruptcy Code section 523(a)(7). *Kish,* 204 B.R. at 130. Thus, the Bankruptcy Court concluded in *Kish* that the surcharge debt (net of administrative expenses) was nondischargeable in a Chapter 7 under section 523(a)(7).

Significantly, for purposes of the current analysis, upon appeal however, Judge Brown of the New Jersey District Court, upon reviewing the issue in light of the impact of the recent United States Supreme Court decision in *Seminole Tribe of Florida,* 517 U.S. 44, 116 S.Ct. 1114, held that to the extent that the Bankruptcy Court's finding of nondischargeability implicated the DMV's legal rights, the Bankruptcy Court's finding would be reversed for *lack of subject matter jurisdiction.* 212 B.R. at 817. Thus, the New Jersey District Court has found that Bankruptcy Courts have no jurisdictional authority to determine dischargeability concerning motor vehicle surcharges when the Eleventh Amendment immunity of the State is invoked.

In relevant part, the District Court in *Kish* specifically premised its holding on the finding that the State of New Jersey in that matter was a "real party in interest" "if the decision rendered in a case would operate against the sovereign, expending itself on the public treasury, interfering with public administration, or compelling the State to act or refrain from acting." 212 B.R. at 813. The Court stated:

Applying the foregoing principles to the case at bar, it is clear that the DMV, which

is a state agency, is a real party in interest for purposes of this appeal. The only way that the debtor could obtain a declaratory judgment that her surcharges, together with interest and costs, were included in her Chapter 7 discharge, would be if the Bankruptcy Court concluded that these surcharges are dischargeable. *At a minimum, such a ruling would seriously interfere with the public administration of the surcharge program and the ability of high risk drivers to obtain and maintain insurance coverage. Thus, the DMV is a real party in interest.* Id. (Emphasis added).

In *Kish*, the District Court rejected the argument of the debtor/appellant that the Eleventh Amendment was inapplicable since she only sought declaratory and injunctive relief [12] against defendants in that case, rather than requesting money from the State of New Jersey's treasury. The Court, citing the Supreme Court decisions in *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–101, 104 S.Ct. 900, 907–908, 79 L.Ed.2d 67 (1984) and *Cory v. White*, 457 U.S. 85, 90, 102 S.Ct. 2325, 2329, 72 L.Ed.2d 694 (1982) found that because the jurisdictional bar of the Eleventh Amendment applies regardless of the relief sought, debtor's argument failed.

Moreover, upon a careful reading of the *Kish* decision, this Court notes with interest that the District Court in that case, in footnote 5, specifically rejected an argument posed by the debtor/appellant that "suggested that 'discharging' a debt does not implicate the Eleventh Amendment because it would not require the state treasury to issue an actual check to the debtor." 212 B.R. at 813 f.n.5. The District Court stated:

"As the Supreme Court recently observed in *Regents of the Univ. of Cal.*, 519 U.S. at –––––––, 117 S.Ct. at 904–05, however, the relevant inquiry for Eleventh Amendment purposes is whether a state's potential legal rights are affected. *Because discharging a debt would clearly have such*

*an impact,* appellant's argument must fail." Id. (emphasis added).

Thus, in undertaking an Eleventh Amendment analysis *in the context of an affirmative suit against the State,* the New Jersey District Court has determined that the type of relief sought is irrelevant.

Giving due deference to the *Kish* decision and following it for its broad concept that post *Seminole* this Court lacks subject matter jurisdiction to compel the state to act or refrain from acting concerning the Motion of the debtor herein to compel the restoration of his state issued driver's license, this Court respectfully finds *Kish* distinguishable on the issue of the jurisdictional ability of this Court to discharge, upon completion of all payments under a Chapter 13 Plan, the motor vehicle surcharges and fines listed by the debtor. In *Kish*, the *adversary proceeding initiated by the debtor against the DMV and state created insurance funds,* necessitated an Eleventh Amendment analysis post *Seminole* to determine whether or not the bankruptcy court had jurisdiction over the defendants involved insofar as the debtor's request for declarative and injunctive relief that surcharges be held discharged in her Chapter 7 proceeding. By clear contrast herein, the Court is simply confronted only with a *proposed confirmation of the debtor's Chapter 13 Plan.*

■ That is, upon careful consideration, the Court finds that it has the subject matter jurisdiction to consider the discharge of motor vehicle surcharges and fines listed by the debtor herein in the context of the requested confirmation, *since such confirmation and resulting discharge of debt pursuant to Bankruptcy Code sections 1325 and 1328 respectively, does not in any manner, involve a 'suit in law or equity' against the State in contravention of the Eleventh Amendment.* By confirming debtor's unopposed Chapter 13 Plan and discharging the fines and surcharges thereunder in accord with the settled law of this Circuit cited earlier herein, the debtor does not seek any

---

**12.** In *Kish*, the adversary proceeding initiated by the debtor to determine dischargeability of a debt, sought injunctive and declaratory relief against the Attorney General of the State of New Jersey, the DMV and the Director of the DMV, the New Jersey automobile full Insurance Underwriting Association ("JUA"),and the New Jersey Market Transition Facility ("MTF").

remedy or require any action from the State whatsoever. This Court finds that to render a decision which finds a lack of subject matter jurisdiction over the proposed confirmation of the debtor's Chapter 13 Plan, merely because *a debt is listed as due and owing to the State,* would be an overly broad interpretation and perversion of *Seminole, Sacred Heart* and *Kish,* which would erode the jurisdiction of this Court in a manner inconsistent with the Eleventh Amendment.

This decision of the Court is further supported by the pre 1994 Bankruptcy Reform Act Supreme Court case of *Hoffman v. Conn. Dept. of Income Maintenance,* 492 U.S. 96, 109 S.Ct. 2818, cited earlier herein, wherein the Supreme Court found that the states were *not* deemed to have waived sovereign immunity by Congress' enactment of former Bankruptcy Code section 106(c). This decision in *Hoffman* resulted in Congress passing the current section 106(a). Said new section (106(a)), with the holding in *Sacred Heart,* is now also found to be unconstitutional. However, the *Hoffman* decision in restating the principle of sovereign immunity nonetheless expressly held:

> Under this construction of section 106(c), a State that files no proof of claim would be bound, like other creditors, by discharge of debts in bankruptcy, including unpaid taxes, (citations omitted), but would not be subjected to monetary recovery. 492 U.S. at 102, 109 S.Ct. at 2823.

Further, this Court in upholding the fundamental jurisdiction of this Court over the treatment of claims in bankruptcy, including dischargeability, has sought to place the *Seminole, Kish* and *Sacred Heart* decisions and their pronouncements concerning the Eleventh Amendment immunity of the State in the proper historical perspective by reviewing several Supreme Court decisions cited earlier herein. Specifically, in *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), a class action was brought by mentally retarded citizens challenging their confinement in a state institution for the mentally retarded. The defendants in that case were various state and local officials and institutions. Significantly, the Supreme Court emphasized

that in deciding the case "we must be guided by 'the principles of federalism that inform the Eleventh Amendment doctrine.' " 465 U.S. at 100, 104 S.Ct. at 908 (citation omitted). In relevant part, the Court interpreted the application of the Eleventh Amendment as follows:

> This court's decisions thus establish that "an unconsenting State is immune from *suits* brought in federal courts by her own citizens as well as by citizens of another state." (Citations omitted). There may be a question, however, *whether a particular suit in fact is a suit against a State.* It is clear, of course, that in the absence of consent *a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.* (citations omitted). This jurisdictional bar applies regardless of the nature of the relief sought. See, E.g., *Missouri v. Fiske,* 290 U.S. 18, 27, 54 S.Ct. 18, 21, 78 L.Ed. 145 (1983) ("Expressly applying to suits in equity as well as at law, the Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when these are asserted and prosecuted by an individual against a State.") 465 U.S. at 100–01, 104 S.Ct. at 908 (emphasis added).

Moreover, in footnote 11 of the *Pennhurst* Opinion, the Supreme Court further instructed:

> The general rule is that a suit is against the sovereign if the 'judgment sought would expend itself on the public treasury or domain, or interfere with the public administration,' or if the effect of the judgment would be 'to restrain the Government from acting, or to compel it to act.' *Id.* (Citing *Dugan v. Rank,* 372 U.S. 609, 620, 83 S.Ct. 999, 1006, 10 L.Ed.2d 15 (1963)).

Finally, in the course of its research on this issue, this Court has reviewed no less than twenty decisions from Bankruptcy Courts throughout the country discussing the state's Eleventh Amendment immunity post *Seminole,* primarily in the context of dischargeability litigation. *See In re Morrell,* 218 B.R. 87 (Bankr.C.D.Cal.)(Eleventh Amendment, as limitation on judicial power

of federal courts to hear suits against states, was not limited in its application only to suits for money damages, but was broad enough to apply to debtors' dischargeability complaint); *In re Elias,* 218 B.R. 80 (9th Cir. BAP 1998)(debtor filed adversary proceeding to determine dischargeability of certain tax debts claimed by State of California, State asserted affirmative defense of sovereign immunity, Ninth Circuit BAP held in line with Third Circuit in *Sacred Heart,* that section 106(a) does not abrogate the states' Eleventh Amendment immunity from suit in the federal courts); *In re NVR L.P.,* 206 B.R. 831 (Bankr.E.D.Va.1997)(bankruptcy sovereign immunity statute held unconstitutional); *In re Koehler,* 204 B.R. 210 (Bankr.D.Minn.1997)(Discharged Chapter 13 debtor brought adversary proceeding against Iowa College Student Aid Commission, seeking declaration that student loan was discharged, and monetary damages for automatic stay violations; Court held that Bankruptcy Code sovereign immunity waiver was unconstitutional as applied to unconsenting state); *In re Mueller,* 211 B.R. 737 (Bankr.D.Mont.1997)( adversary proceeding to determine liability for tax constituted "suit" for purposes of Eleventh Amendment); *In re Christie,* 218 B.R. 27 (Bankr.D.N.J.)(motion to avoid lien brought by debtor; Court held that county to which lien had been assigned qualified as an "arm of the state" for Eleventh Amendment immunity purposes); *See also, In re Rose,* 214 B.R. 372 (Bankr.W.D.Mo.1997); *In re Burke,* 203 B.R. 493 (Bankr.S.D.Ga.1996); *In re Charter Oak Associates,* 203 B.R. 17 (Bankr.D.Conn.1996); and *In re Louis, Harris,* 213 B.R. 796 (Bankr.D.Conn.1997).

Upon a detailed review, this Court has been unable to find even one reported case in which a Bankruptcy Court denied *confirmation* of a Chapter 13 Plan which Plan contemplates a discharge of a debt owed to a state, based upon a lack of subject matter jurisdiction.[13] This Court is satisfied that none exists. Based upon a careful reading of the above referenced cases, in making its determination that confirmation of the debtor's Chapter 13 Plan which contemplates a discharge of motor vehicle related debts, which in part run to the State, does not run afoul of the Eleventh Amendment post *Seminole,* and *Sacred Heart,* this Court emphasizes the scope and limitation of its current holding herein. That is, were this Court requested to adjudicate a dischargeability action brought by a debtor or an action to enforce the bankruptcy discharge against the State, this Court's ruling would have been different in light of *Kish.*[14]

In summary, regarding the two specific issues raised herein, the Court finds first, for the reasons aforestated, that this Court lacks subject matter jurisdiction to order restoration of a debtor's driving privileges through issuance of an order to either the DMV or the municipalities concerned, since a ruling concerning restoration of a debtor's driving privileges would, of necessity, compel the State to act or to refrain from acting in violation of the Eleventh Amendment. Second, upon review of the District Court's Opinion in *Kish,* this Court finds that it *does* in fact have subject matter jurisdiction to discharge motor vehicle fines and surcharges in the context of confirmation of and payment under a Chapter 13 Plan, since such confirmation and resulting discharge of a State debt is not a "suit in law or equity" against the State of New Jersey in contravention of the Eleventh Amendment. The language in *Kish* in footnote 5 has caused this Court to undertake the within lengthy examination concerning its jurisdiction. It must also be fundamentally recognized however that while the State of New Jersey objected to the jurisdiction of this Court as to the reinstatement of the debtor's driving

---

**13.** The language in *Kish, at fn. 5,* that refers to the Eleventh Amendment barring even a Bankruptcy Court's right to discharge a state debt must be viewed in the context of *Kish* being a Chapter 7 case and the issue coming before the District Court in an Adversary Complaint with the State as a defendant.

**14.** In so finding, the Court recognizes that were a debtor to bring an action seeking a determination of discharge against state officials charged with enforcing the obligation owed to the debtor, then considerations under the doctrine of *Ex parte Young* may apply. Since the matter is not currently before this court for determination, it only need make parenthetical reference to the doctrine.

privileges, the State took no position on the issue of the Chapter 13 confirmation and resulting discharge.

If this Court were to find that it lacked subject matter jurisdiction to grant a Chapter 13 discharge to any claim scheduled by a debtor simply because it involves the sovereign, not only would we be improperly construing the concept of Eleventh Amendment immunity as it applies to "suits in law or equity" against the State, but we would also be implicitly nullifying all other sections of the Bankruptcy Code which make, for example, reference to the ability of this Court to treat tax claims.

## CONCLUSION

With its holding herein, the Court fully recognizes that in confirming a Chapter 13 plan which contemplates a discharge of a debtor's motor vehicle violations upon completion of all payments under the Plan, the Bankruptcy Court is in effect granting a "right without a remedy", insofar as the ability of this Court to compel the restoration of a state issued driver's license. While acutely aware of this anomaly created by the recognition of the discharge of the debt under the federal bankruptcy statutes, without the jurisdictional ability to compel the sovereign to enforce the discharge, the proper redress lies with the United States Congress and is beyond the prerogative of this Court.

Since this Court is without jurisdiction to impact a state issued and regulated driver's license, the debtor's Motion to Compel Restoration of driving privileges must be denied. Moreover, since the proposed confirmation of debtor's uncontested Chapter 13 Plan does not, in any manner, violate the Eleventh Amendment immunity of the State of New Jersey in seeking to discharge motor vehicle fines and surcharges which in part run to the State, this Court forthwith, enters the accompanying Order confirming debtor's Chapter 13 Plan.